Case number 13-3165, Bobby T. Sheppard v. Norm Robinson. Argument not to exceed 30 minutes per side. Mr. Bonnert, you may proceed for the appellant. Your Honors, if I may reserve four minutes for my rebuttal time. May it please the Court, my name is Alan Bonnert and I represent the petitioner appellant Bobby Sheppard. Every court to consider the juror misconduct in this case has condemned it but found that there was no evidence of prejudice from that misconduct. That's because the trial counsel and post-conviction counsel failed to investigate and present that evidence based on a mistake or based on an incorrect understanding of what the law actually required. Here today I would like to address two of the main reasons why this Court should reverse the District Court, reopen Sheppard's case, and remand for further proceedings. First, whether to reopen is a highly fact-specific case-by-case inquiry and as the District Court suggested, extraordinary circumstances can be shown in this case by showing that Mr. Sheppard can in fact excuse the default by meeting what is now the four-part Martinez-Trevino test. And the District Court actually found that Sheppard had satisfied what essentially are three of the four factors. Well, just, I mean, before you get into the factors themselves, the Martinez inquiry is separate from the Rule 60B inquiry. I mean, you know, Gonzales is the Rule 60B case. Martinez, I think, is contemplating a situation, not to say it's totally inapposite to 60B, but Martinez itself is talking about when we can exclude or excuse a procedural default for a claim that is not already the subject of a final judgment in a District Court. And that's when you need to make the, you know, as if, let's say Martinez came down a week after you filed the federal habeas petition. Then the question is, you know, is it a substantial claim? But now we have a final judgment. So, I mean, the way you just phrased that suggested that if you meet Martinez, you reopen under 60B. What I'm suggesting is 60B is a separate inquiry. Would you agree with that? Yes, Your Honor. I mean, certainly the 60B inquiry goes to, are there extraordinary circumstances? And we've argued that, certainly. What we're saying here today is that the District Court's analysis basically said if you can show, if you can satisfy the requirements necessary to excuse the default in this case, that that would be extraordinary. And so there would be extraordinary circumstances. Now, I should note that. Judge Frost said that? I mean, that's, you're characterizing what he was. I think that's a fair characterization of Judge Frost's core analysis in denying relief on the 60B motion. We have to make our own judgment about that. About the existence of? Extraordinariness. Yes, Your Honor. Yes. And I think it should be noted that we're not just saying that we can overcome the default and, therefore, that's extraordinary. What we're saying is there are a whole variety of reasons why this case is extraordinary. Among them, and perhaps chief among them, is that we are able to satisfy the four-part Martinez-Trevino test, and, therefore, if the case was reopened, it wouldn't be all for naught. It's not like it would be going back just for no reason. There's a strong basis that the Martinez argument factors can be met, and, furthermore, there's also the underlying trial IAC claim is strong. Judge Frost found it substantial, which is certainly one of the elements of the Martinez test. Do you find that Judge Frost then went on, although saying that the extraordinary circumstances did not exist, then went on to decide the issue on the merits or not? Your Honor, yes, I think that's a fair reading of what Judge Frost did, and that's part of what we say the judge did incorrectly because, at that point, the issue is, has there been a fair and meaningful opportunity to present the evidence in support of the underlying claim before there's any kind of a merits adjudication? Martinez and Trevino are very clear that, and especially in Trevino, that, especially if it's a substantial claim, equity and the idea of protecting the fundamental bedrock rights of the Sixth Amendment right to counsel says that there has to be at least one meaningful opportunity to investigate and develop and present the evidence on. Did you want an evidentiary hearing which you did not receive? Yes, Your Honor. We asked Judge Frost for an evidentiary hearing, and we would ask that as part of proceeding today, that would be part of what we would ask for is to remand for. . . What do you want to present at the evidentiary hearing that you didn't get a chance to put before the court below? I think, Your Honor, there's the issue of whether it's a Martinez-Trevino hearing, as the courts have kind of taken to calling them, and that's a question of can we satisfy those four parts that touches on a threshold inquiry of the underlying Trial I.C. claim or whether it would be a hearing on the Trial I.C. claim because there's some overlap but there's some difference. But certainly at a Martinez-Trevino hearing, it would be testimony or evidence from, for instance, post-conviction counsel, testimony and evidence from trial counsel, at least to go to prove up the substantiality of the underlying claim. But especially Judge Frost said that there was no deficient performance by post-conviction counsel. Let me just move off that point. I mean, a Martinez-Trevino hearing is one thing. A hearing on the merits, that's barred by Penholster, isn't it? I mean, we've kind of gone through this in this case. I mean, if you want to draw evidence about the merits of a claim that you're trying to present, the state court hasn't gotten that evidence, and Penholster says we review the reasonableness of state court. I mean, I guess what's your answer to that? Well, Your Honor, I recognize that the juror misconduct claim was here before the court previously. But we're not here on the juror misconduct claim. We're here on the ineffective assistance of counsel claim, which has never been adjudicated by the state court. So Penholster doesn't actually apply. There's no evidentiary bar on that development because it was presented. It's exhausted, but it was never. Well, that raises the question about exhaustion of state remedies on the ineffective assistance of counsel claim. Also in the state court, the state court, as I understand it, has never adjudicated the jury trial unbiased jury claim with new evidence that was presented in federal court either, right? The state court has never adjudicated either ineffective assistance of counsel or the claim under the Sixth Amendment that you have on the merits, right? Correct, Your Honor. If I'm understanding your question correctly, the juror misconduct claim as distinguished from the IAC claim related to the juror misconduct claim, the juror misconduct claim was considered as part of the direct appeal. But the record before the state court in that case on that claim was just the two Jones affidavits and the transcript of the conversation in chambers. It was harmless error on the basis of that evidence, but then later the two people reversed their testimony and that's never been presented. Correct, Your Honor. I have two claims that have never been presented to the state court. One, ineffective assistance of counsel. Second, the Sixth Amendment claim that I'm talking about. Now, my question is, is there any opportunity now to present those claims and exhaust the judicial remedies with respect to either or both of those two claims that have not been presented to the state courts? Well, I think Ohio law presents two opportunities typically to go back. You've got the motion for new trial as well as a motion for a second or successive petition. So I think the short answer is yes, that there would be conceivably a way to go back. I should note, however, that the trial IAC claim related to failure to develop the evidence related to the juror misconduct claim, that trial IAC claim was actually presented to the state court in the second or successive habeas petition. It wasn't adjudicated on the merits, but it was actually presented. So there wouldn't necessarily be an exhaustion issue on that. I think it's also clear that there's no exhaustion. There would be one, maybe, on the Sixth Amendment claim with the change in testimony of filing judge. Yes, Your Honor. I think there would be a way to do that if that's what this court would deem reasonable. I know that in some recent cases in, I believe, Kinley, as well as Lynch v. Hudson, this court has granted motions to remand for stay and obey so that a petitioner can go back and exhaust evidence in the state court so that there wouldn't be any kind of exhaustion issue. Doesn't the federal law, 2254, I guess, doesn't it require exhaustion of state remedies before we act on the question? Your Honor, I think the short answer is yes, but it's not clear right now whether that extends to just evidence that needs to be exhausted when we're talking about a claim that was presented in state court but not adjudicated on the merits, so no pinholster problem. But there's evidence that was never presented to the state courts. I think that's an open question right now in the Sixth Circuit and is certainly a question being wrestled with across the country. Does that evidence need to go back to be exhausted? There is a way under Ohio law with a motion for a new trial or a motion for a second or successive petition that that evidence could be exhausted. You're saying it's an open question whether evidence newly taken, I guess, in a federal proceeding or evidence relating to a claim that would be procedurally barred but for Martinez warrants staying further action with regard to that claim in federal court and sending it to state court to take a first look at the claim with that evidence. Is that what you're speaking to? Yes, Your Honor. I think that there have been cases where courts have ruled on that, and as I read the motion— I'm just trying to make sure I'm following. I guess I'm not quite sure I understand what you're asking, Your Honor. You said you referred to an open question in our court. There's an open question. I just said what I thought you were saying that question is, but I'm just trying to follow. I guess not necessarily just in the Martinez context, although certainly the Martinez context does present a whole additional ball of thorny issues. But just in general, there seems to be an open question on if the claim has— I'm sorry? I think I understand what you're saying. Okay. So, yes, there would be a way if this court would want to remand it with instructions to stay and obey in the district court, to go back to state court to exhaust those type of claims. The state can waive this, as I understand it, if they want to. They can. They have to explicitly do that, as Your Honors know, that the law requires them to explicitly. To this point, there's no explicit waiver that we would be able to point to. Just for a threshold matter, I'd like to raise it before we dive into sort of the minutia of Martinez, is what ineffective assistance claims we're actually dealing with here. The petition, first, I think there is case law, Landrum in our court, I think there are other cases as well, that say an ineffective assistance claim is bounded by the theory that underlies it. So you can't just say, okay, we asserted ineffective assistance at some earlier stage, and that opens the door to any ineffective assistance theory later. Your claim is the theory on which you filed the ineffective assistance. Now, in your habeas petition in this case, the ineffective assistance claim was that trial counsel should have admitted expert testimony that Jones' definition that she gave to Fox of paranoid schizophrenia was misleading. You argued Smalden was there all along,  So that was one basis for ineffective assistance. The other was that trial counsel should have gotten Jones to admit that Fox had misrepresented what Jones told him about paranoid schizophrenia. And this is laid out on page 109 of the motion in support for the petition that was originally filed in this federal case. It seems like you've got some new theories now in the 60B, namely that counsel should have cross-examined Fox better, i.e. elicited the admission from him that it would be easier for him, that Jones' description of paranoid schizophrenia made it easier for him to vote for death, number one. And number two, that counsel should have gotten Jones to admit that she had never read Smalden's testimony. Those two deficiencies are not part of the theory that were set forth in the habeas petition in this case. And it seems to me that they would be second and successive under the Supreme Court's precedence. A claim based on those alleged deficiencies would be a second and successive claim and that what we are limited to in this appeal are the theories set forth in the petition, the first two that I described to you. Is that fair? Do you disagree with that? I respectfully disagree, Your Honor. I think that if you look clearly at the petition itself, the actual claim as set out is trial counsel should also have submitted at least some evidence by affidavit or testimony to support their motion for a new trial on the basis of juror misconduct. And that's what they had to work with at that point. And so the claim... But that's not what... I mean, some evidence then became Smalden evidence in the brief. I mean, that's a very vague description of the claim. And then in the brief, we get the more specific descriptions, the two-part ineffectiveness theory that was presented to the district court and then that was part of the case that we earlier decided. And this theory now about, you know, you should have gotten a certain admission from Fox, you should have gotten a certain admission from Jones, that was never... that's just not part of the petition that was originally presented. And, I mean, the Supreme Court's been... I mean, this potentially raises the exact problem that Congress was trying to end with 2254, which is just perpetual habeas litigation based on new claims. Your Honor, I think the focus of the claim as pleaded in the amended petition was that there should have been something that was submitted with the new trial motion because under Ohio law, if you don't support the new trial motion with evidence, then it's going to fail. Right? And in this case, the only thing that was submitted with the new trial motion was submitted a month and a half after the new trial motion and that was just simply in response to the arguments from the state that there was a problem with the evidence alliande rule. And so counsel went, they only got the affidavit, the first Jones affidavit, that simply said, yeah, the contact happened. But there was never any kind of investigation, any kind of questioning of Ms. Jones, never any kind of bringing her in for the hearing on the motion for a new trial. And so I don't think it's – there may have been specifics pointed out in the discussion in the traverse, but I don't think that we can just necessarily say only those things are at issue when the claim clearly said there should have been at least some evidence. And that's what we have here. We have some evidence that should have been presented that this court already found was available at the time, but the trial counsel just didn't bother to do. Let me ask this. Did the district court actually, Judge Frost, actually rule himself on the ineffective assistance of counsel regarding the Jones-Fox situation there? I thought that whether it was included in the original petition, this particular set of problems about Jones and Fox, that Judge Frost ruled on it and discussed deficient performance and prejudice in terms of the Jones-Fox Sixth Amendment problem. If you're talking about the original Judge Frost ruling. The one that you appealed from. Okay. The magistrate judge framed the claim as a very narrow frame, and we objected, and Judge Frost did not go with that interpretation. In fact, he did, in his discussion, talk about the different elements of the ineffective assistance of counsel claim. So the claim that Judge Frost incorrectly, we argue, decided on the merits by reaching through past the Martinez-Trevino inquiry and went right to the merits, that was the IAC claim that we're talking about that was the same IAC claim that was raised in the petition, that counsel should have presented some evidence in support of the new trial motion. Because without that evidence, it was doomed to fail. And moreover, based on the evidence that we do have, which isn't everything that's necessary for the trial IAC claim to be meaningfully adjudicated, but what we do have certainly significantly undermines the conclusion that the Supreme Court of Ohio made on the juror misconduct claim. As far as the affidavit from Ms. Jones showing that it could have only helped Mr. Shepard, well, we know that that's not true now. We know it's in fact 180 degrees opposite from that, based on what Ms. Jones and Mr. Fox then later testified to. So we have the issue of the ineffective assistance of post-conviction counsel is the second point that I was going to get to today, and that is that Judge Frost found in Mr. Shepard's favor on three of the four Martinez factors. The only one that remains is the issue or the question of ineffective assistance of post-conviction counsel. And on that, Judge Frost only breached the deficient performance part of the inquiry. But Judge Frost's findings are based on findings that are incorrect and not supported by the record. In fact, they're controverted by the record in several different points. For instance, Judge Frost found that there was no duty for post-conviction counsel to do any investigation because of the state of the evidence at the time. But that clearly is not the case under this court's precedent and the Supreme Court's precedent, that even if there's even a little bit of evidence in the record, counsel still has an investigative duty to put the state's evidence to the test. And moreover, Judge Frost found that there's no evidence, or Judge Frost found that there was reason to believe that post-conviction counsel made a reasoned strategic decision in not raising the trial IAC claim. But there's just simply no evidence in the record right now that supports that at all. In fact, as we said in our brief, that's the improper post hoc rationalization that Harrington v. Richter explicitly prohibits. And so we have those issues as well as the duty, again, the duty to investigate red flags. The red flags related to this germist conduct issue were all over the place. You had, for instance, trial counsel arguing one version of the law, and you had the prosecution arguing a completely different mutually exclusive version of the law. Just a simple reading of the new trial motion and the response to it and the oral argument should have alerted trial or post-conviction counsel that there's a problem here. Either the prosecution is stating the law wrong or trial counsel is stating the law wrong. I at least have to investigate and know what the law is. Hinton v. Alabama just a couple of years ago emphasized that it's quintessential deficient performance by counsel to act on a mistaken understanding of the law, especially when that mistake is central to the case. And here it can't be disputed that the mistake of the trial counsel in failing to present evidence of prejudice from the misconduct was central to the case involving a death sentence for Bobby Shepard. Judge Frost also, he erred in when he said that the mindset, it's not clear that the mindset of Juror Fox and Ms. Jones seven years later would have been the same as it was immediately after trial. But in some respects, that also goes to show how prejudicial it was for post-conviction counsel to not do the job that they needed to do at the time. But Judge Frost's analysis of it also ignores the fact that the most critical of the evidence that goes to those issues is objective fact, objective testimony that's not subject to change over time. For instance, either Ms. Jones had ever read a transcript in her life, as she alludes to in her second affidavit, or she hasn't, as she admitted in her deposition and in the federal evidentiary hearing. If she hadn't, then there's no possible way that she could have totally revered, thoroughly reviewed the transcript of Dr. Smaldon's testimony trial and then said in her affidavit that everything that she told Juror Fox was totally consistent. The Supreme Court placed a great deal of emphasis on those averments in Ms. Jones' second affidavit. And so when we find out that those averments just simply are not true, objectively not true, that's not matter that changes or depends on a passage of time. Either Ms. Jones was a licensed psychologist who was informed about these issues, or she wasn't. I also changed his testimony. I'm sorry, Your Honor? I say Fox, the juror, also changed his testimony and said that he was influenced by the conversation he had with Jones some years later. And the change in their testimony is a little inexplicable to me. I don't know quite what happened, why they said Fox and Jones said what they said to begin with, which came out to be harmless error. Or if they had said what they said later, it clearly would not have been harmless error, I guess. Right? Exactly right, Your Honor. I mean, I think there's a question as to the origins of... What caused them to change their testimony? Do you have any idea? I can only speculate, Your Honor. Their lawyering? I think perhaps a change in the context. You know, if one is being hauled in front of the trial judge that one was just in front of for the last however many days, weeks, that perhaps one would be hesitant at best to admit that there was anything wrong. The idea of the vermins in Ms. Jones' second affidavit, I think, are highly questionable. Accordingly, there's no record evidence that there was ever a transcript even available for Ms. Jones to review until the transcripts were filed on February 1st, the year after. This has never gone before. The Jones-Fox change of testimony, kind of 180 degrees, has never gone before any court, Ohio State Court. Correct. Correct, Your Honor. Correct, Your Honor. But the trial I see claim has in the course of the second or sixth... I see my time is up. Thank you, and you will have your rebuttal time. Thank you, Your Honor. May it please the court, Assistant Attorney General Charles Willey, arguing on behalf of the warden. Your Honors, the issue presented here, of course, is whether the district court abused its discretion in denying Mr. Shepard's Rule 60B motion. In reaching that fundamental question, the threshold question presented is whether Mr. Shepard showed the extraordinary circumstances necessary to reopen the judgment. And before those circumstances are concerned, then the judgment which this court previously affirmed, which included a thorough review of the claim, juror misconduct, whether there is extraordinary reasons to open that, and if there is not, then that judgment is not before this court. Now, we start, Your Honors, with the general rule that a change in the law is not ordinarily sufficient to constitute extraordinary circumstances. After saying that this is not an extraordinary circumstance, which would normally lead to not deciding the question of ineffective assistance of counsel, the court then goes on to decide, it appears, the ineffective assistance of counsel claim, right? Your Honor, we would characterize the district judge's decision in terms of the Martinez v. Ryan and Trevino exception. There is somewhat of an overlap of the procedural question, if you will, versus the underlying ineffective assistance of counsel claims. But we would point this out, Your Honor. So this court reviews judgments, not opinions. And therefore, regardless of what the district court did here, the district court denied relief. We do review opinions, counsel. Yes, I understand that, sir, but ultimately the judgment, the district court's judgment is before the court. Secondly, the warden is certainly not bound by any reasoning that the district court provided. This court can affirm on a basis, another basis, that perhaps even the district court did not consider or did not indeed think was sufficient. Our position, Your Honors, is this, is that before he can make this threshold showing of extraordinary circumstances, then there really is no basis to look at the merits of any claim, not only the ineffective assistance of trial counsel claim for allegedly not adequately litigating the underlying juror misconduct claim. There's simply no basis to do that unless he can show extraordinary circumstances. And we have a general rule here that says, normally a change in the law, which is what he's relying on, a change in the procedural default rules. You don't think that the difference between life and death, if there were a consideration of the merits as a possible difference, that death is different, is not an extraordinary circumstance? Your Honor, I believe this. I think the clause is clear. Everybody recognizes that capital cases, deservingly so, receive extra care. By the same token, the United States Congress passed a statute that has severely limited review of second petitions or review of claims, belated claims, and they did that for the sole, one of the reasons they did that was concern for unnecessary delay in capital cases. So I guess my response would be, Your Honor, is yes, it's important, but I think it's fair to say that the law recognizes that the fact that it's a death penalty case in and of itself, although important questions involved of life and death, does not necessarily mean it's an extraordinary circumstance. Here we have a situation where we are not now, we're talking about this general rule. Well, this court has talked about this very situation in the McGuire case. The court looked at under what circumstances can the Martinez slash Truvino exception constitute exceptional circumstances under Rule 60B. The court reaffirmed the general rule that says a change in the law can't, and then the court went on in that case to observe that at best these exceptions only applied weakly, weakly at best, and then the court went on to say in that case they weren't sufficient to reopen the judgment. Now, here you have a situation. Is that McGuire? That's McGuire, yes. Well, McGuire really does emphasize that, quote, the single fact of the change in law does not warrant reopening, and they kind of hang their hat on that, and I suspect that Mr. Bonner would say we have more than that single fact here. Yes. What's your response to that? My response is this. What is the extra? Well, it seems to me that the argument that was made in McGuire is the same argument being made here, and it's this. My extraordinary circumstance is the extremely powerful, persuasive, and meritful claim that my lawyers bungled. So if that were the case, if indeed you can show extraordinary circumstances for your counsel's alleged effectiveness in presenting a claim by showing the claim is good, then I would say that the exception swallows the rule. That is what is really being done here. Now, I want to go back a little bit to McGuire, take a look at the framework that McGuire used, apply it to this case. Here we have a situation where under Ohio law it is arguable, and as a matter of fact I would submit the state courts in this case recognized it, that this claim of ineffective assistance to trial counsel for bungling the new trial motion could have been raised on direct appeal. It could have been raised on direct appeal. As a matter of fact, it was apparent from the record this is not a situation where you have trial counsel allegedly doing something relating ineffectively to the judgment itself. Judge Frost disagreed with that, though, didn't he, in his opinion? I would say it's fair to say that he did not accept the warden's argument in that regard. But nevertheless, if you take a look at the record, this isn't a case of your classic ineffective assistance of counsel for, say, failure to investigate for evidence at trial. This is a claim where the ineffectiveness is the failure to adequately present another claim of error, namely a misconduct by a juror which itself is adjudicated on the record and subject to appeal. We would submit that counsel could have raised this on direct appeal because it's apparent from the record what counsel did in the motion for a new trial. It's apparent. Are you saying now he did raise on direct appeal the ruling of the trial court, as I understand it, on the Fox Jones new trial motion, which the trial court said harmless error, and the appellate court agreed with the trial court harmless error because the testimony by Fox and Jones had not been as it subsequently was that there was a very serious problem here? Well, I would say, yes, Your Honor. He did raise it, didn't he? It was raised on direct appeal. Correct. The question here, though, is could he later have come back, could he also on direct appeal have said, oh, if you don't think that I convinced you that Juror Fox should have been excused or there was prejudice for what the juror did, my lawyer should have presented more evidence than he did. As a matter of fact, he should have presented Dr. Smaldon's opinions on behalf of the new trial motion, which has been said in habeas corpus. Dr. Smaldon's testimony is part of the record. So it is by no means a foregone... At best, it's questionable whether this claim had to be raised in post-conviction at all. It's true that the Sixth Amendment unbiased jury question in this case changed completely when Fox said, yes, I was influenced and Jones said, I didn't give the right testimony. No, Your Honor, I don't. That changed the merits of the Sixth Amendment question from harmless error to an admission of a serious problem, did it not? I would disagree, Your Honor, respectfully. Is it okay for the foreman of the grand jury to call on the telephone a person, a friend of his who he thinks is a psychologist and ask her to give him information about what he should think about the mitigation defense in the case? That's okay? No, Your Honor. What I would say, Your Honor, is this, is that the nature of the claim did not change based on further testimony or evidence concerning the differences between the brief, boiled-down version of schizophrenia that the juror heard versus the real deal. Here's the question we would submit, Your Honors. Should this juror have been excused because the juror could no longer be unbiased and could no longer decide the case based on the evidence presented in court and not what he heard from his friend for two or three minutes? That question has a large measure of credibility determination involved. The trial judge questioned Juror Fox. He made an assessment as to the credibility when Juror Fox said... Juror Fox said then it had no influence on me. That's right. Subsequently, Juror Fox said it changed my opinion. It had a significant influence on me, and I now admit it. At the time, however, Your Honor, the time that the trial judge's credibility determination could not be based on something that the Juror Fox would say years after the fact. It was based on what he was saying to the judge at that moment. Now, it is true that when the prosecutor produced an affidavit from the psychologist that Juror Fox talked to, it is true to the extent that that affidavit indicated that what had been said was not inconsistent with the trial testimony. That certainly bolstered the credibility of the juror when the juror said it didn't influence me and I didn't consider it. But the ultimate question here, Your Honor, is was this juror credible when he said, no, I don't think it influenced me, no, I think I fairly decided the case, and was there support for the trial judge's determination that that was of credibility? And yes, there was. Now, if we take a look at going back to how we raised this claim, it is interesting in this case that it has been argued in the past that not only was this case, not only was it something that couldn't have been raised on direct appeal, but at one point it was argued that it couldn't be raised in post-conviction because it involved a new trial motion. That is not the argument before the court today, but at one point in this case, that's what the argument was. It seems that the law of Ohio hasn't changed. The federal rule has, but the law hasn't. Either in Ohio this type of claim could have been raised on direct appeal or not. We would submit that the law in Ohio is fairly clear, that claims of ineffective assistance of trial counsel not only can be raised on direct appeal, but in some circumstances must be. Let me ask you the same thing I asked counsel for the petitioner. Neither the Fox Jones new testimony under the Sixth Amendment, that claim, nor the ineffective assistance of counsel claim has been presented to the courts of Ohio on the merits of those two claims. Now, should we follow the Rule 2254 that says that we should not adjudicate claims that have not been exhausted and should seek to have them exhausted if there is a remedy for that? Is this something we should do in this case? Now, you can waive that. As I understand the way the rule works, you can expressly waive that and avoid any exhaustion problem. But that has not been done, so there is an exhaustion problem here, right? No, Your Honor. We would respectfully say no. There's a fundamental problem involved, and it's this. The Supreme Court of the United States has said that a Rule 60B motion, if it presents new claims which challenge the validity of a conviction or sentence, then it must be treated as a second or successive petition under Section 2244B. Here, by definition, there are no new claims. If there were new claims, whether they be unexhausted or not, then they would not be before this court on a Rule 60B motion because they would have to be considered a second or successive petition. You're saying here that the successive petition doctrine, which is a court-made doctrine that is a little nebulous, should be applied over the Rule of 2254 requiring exhaustion. Is that what you're saying? No, Your Honor. What I'm saying is this, is that Section 2244 puts explicit statutory limits on the second or successive petitions.  that when a Rule 60B motion presents such claims, in other words, presents new claims attacking the underlying judgment, then the petition must be treated as a second or successive petition for the purposes of 2244B and must meet those requirements. In other words, what I'm saying here in a nutshell is that in order to be here under a genuine Rule 60B, we have to be talking about a claim that was already presented. Fox Jones' problem has only been presented, so far as I know, once, and that was in federal court, which our court then ruled on on appeal, and the ineffective assistance of counsel claim has been presented in federal court once. That's this ineffective assistance of counsel claim. Isn't that correct? If they were presented, Your Honor, then they're exhausted. As a matter of fact, whatever claims were presented in the petition were exhausted. As a matter of fact, A whom? When? Petitioner argued in a successive petition for post-conviction relief that trial counsel was ineffective for failing to present evidence in support of the motion for new trial. The state court held that the claim was both barred by the second petition rules in Ohio, and this is what I think is important, because it was raised judicata. It could have been raised in the first petition. So what you have here is you have it clearly, a claim that was exhausted because it was presented to the state courts and the state courts adjudicated it. Did they adjudicate the merits? No. But they adjudicated final judgment. They've never had an opportunity to adjudicate the merits of the claim that Fox and Jones, when they changed their testimony, they've never adjudicated the problem that's presented by that set of facts, right? Your Honor, suppose that even if we agreed, even if I said yes provisionally. Well, I'm just asking you yes, isn't that true? But we would disagree with that, but even if we're wrong. You're saying that they have adjudicated it in the state court? In what opinion or where? What I'm saying, Your Honor, is this, is that the claim of legal error here that trial counsel was ineffective in his handling of the motion for new trial was presented and adjudicated by the state court. The state court did not review the merits, but the state court denied the claim based on a procedural ground. Now, to the extent... That was the basis of the procedural default determination by Judge Frost in the earlier round. Yes, exactly, Your Honor. But that's what they're saying Martinez would set aside. Exactly, but for the question of exhaustion, you see, Your Honor, my point is only this, is for the question of exhaustion doesn't come up because even if you construe this, Your Honor, as a new claim, if you construe it as something different, it can't be here under Rule 60B because it has to meet the second petition rules. And nobody is suggesting here that any... If you can turn this into a new claim, nobody is suggesting that you can meet the second petition rules. Nobody is saying that you can do that because you can't. All I'm really asking is shouldn't that be exhausted in the state courts if the merits of the claim have not been adjudicated? Yes. Exhaustion doesn't require the petitioner to obtain a merits determination. Exhaustion requires the prisoner at the time he files his petition, or she files her petition, to exhaust any available state court remedies at the time. Here, whatever available remedies were there, they were tried unsuccessfully. Well, to kind of pick up with the, I guess, the Gonzales analysis here, I mean, you point out that a change in the law normally is not a ground to reopen under Rule 60B. They say, well, we have more than just the Martinez change. We have evidence developed in federal court. We have other evidence that shows trial counsel really was ineffective in failing to be more effective in trying to, you know, when this issue came up in the trial court. What exactly is your answer to that? My answer is this. I think you alluded to earlier is, I think we said in the brief, that his range of ineffectiveness of trial counsel, he's arguing now, is far greater, far different than the claim that he presented in his petition. As a matter of fact, the Maastricht judge pointed that out. The Maastricht judge said, look, your claim of ineffective assistance of trial counsel at issue here was that trial counsel failed to present evidence like expert evidence in support of the new trial motion, like the evidence presented by Dr. Smalden or something similar. And that has been expanded to include many, many other allegations. It's been expanded to include you didn't get the same answers that my lawyer got in the federal evidentiary hearing, basically. Right? Exactly. And as you pointed out, even more so. And I would like to just address that very quickly, is that you've asked a good question, Your Honor, about why would the juror change his mind? Why would he change his testimony? Your Honor, I attended that evidentiary hearing in federal court. I can say, as I think all of you are familiar, questioning a juror, putting a juror on the stand, sharp questioning, you probably will get the juror to say some things that are contradictory. It was a very different examination, certainly, than he underwent in the original proceeding. I think he got asked the question about seven times, and he gave an answer about seven times that it didn't affect him, and then finally he said, well, it might have made it easier. But he also said, I believe in the federal proceeding, that he had already made up his mind about this penalty before he talked to Jones. Yes. And I think it's a good point, Your Honor. I guess you can construe that. You can construe the persuasive effect or the case-changing effect of the Jones testimony and the Fox testimony in evidentiary hearing different ways. And I would ask you, do we just construe it ourselves, kind of assess ourselves whether we think it really was that important, or do we not even get to that point, in your view? Assuming that we get to that point, okay, and I don't think you can, but assuming that you do, I think it's fair to say that, again, the credibility of Juror Fox is the real critical question. The credibility is assessed by the trial judge who asked him the question, who heard him answer. With a straightforward question, he heard him answer. He maintained that at the little hearing when he was questioned by the defense attorney. That is, I think, critical. I think you are kind of recasting the issue there because they lost on their juror misconduct claim the first time around in our court, and they're not seeking to revive that claim itself. What they're now complaining about is not the trial judge's decision but trial counsel's representation. Your Honor, I would disagree in a sense. Okay, well, that's why we're here. I mean, tell me why that's mistaken. As you can see, any kind of time of ineffective assistance to counsel claim, ultimately, when you have an ineffective assistance to counsel claim for the bungling or a failure to raise another claim, ultimately the merits of that underlying claim kind of creep in because when you look at prejudice, you have to say there's a reasonable probability of a different result. So in this sense, if trial counsel really was, suppose that trial counsel would have put on this extra evidence. Is there a reasonable probability that that would have overturned the trial judge's credibility determination? That the trial judge might have said, well, you know, I don't believe him now. We would submit no. And for another reason is this. What matters to a juror is not the difference in technical difference between what the five-minute, boiled-down version of schizophrenia was versus the two-hour-long one. What matters to the juror is what do I think it means. And that's what he took it meant. And he took the boiled-down definition as, oh, he's out of touch with reality. Well, I would call the court's attention to... This juror was told several times, I'm sure, that you may not talk to people outside the jury about this case. You may not ask questions of people. Yet he defies this instruction by the trial court and goes so far as to call someone he thinks is a psychologist to ask that person the penultimate question on mitigation, what is schizophrenia? You know, I mean, that goes a long way. That's not just a little thing that the juror decided on the spur of the moment. I mean, that requires defying the trial judge's instruction and so on. Your Honor, I'm not suggesting that what the juror did was correct or advisable or permissible. Far from it. But in terms of assessing prejudice, and I would submit that even then, that was the focus that the trial court took to a certain extent about the differences in definitions. All I'm saying is, in assessing prejudice and in assessing the juror's ability to be fair, if the juror really didn't think there was anything different from what the psychologist told him in five minutes and Dr. Smalden told him at the trial, then he was not biased. He was not deciding the case based on evidence outside the record. And when he said, oh, she told me he was not in touch with reality, I would call the court's attention to the Ohio Supreme Court's description of Dr. Smalden's testimony on direct appeal in terms of the mitigation and considering the mitigation. The Ohio Supreme Court noted that Dr. Smalden said that what a layperson might actually think of was he lost touch with reality. He couldn't understand events. I don't have in my mind right now the precise testimony, but it is in the direct appeal. I would submit a layperson could credibly say and think, oh, she didn't tell me anything different than what I heard. And of course, if he indeed considered, and there's not a question here, nobody has said, nobody has alleged the juror, Fox, did not consider what was presented. To the contrary, he maintained, even in federal court, I did consider what was presented. I did consider the testimony, and I essentially found that death was appropriate. Here, I guess really what it comes down to from the perspective here is our state's perspective is that we have a situation where Martinez versus Ryan is considered to be, alleged to be an extraordinary circumstance. We have a general rule that says changes in law doesn't do that. We have a decision by this court that in similar circumstances said that it wasn't. We have a situation here where it's not even clear whether the exception even applies. We would submit that even if it's conceivable for a change in the law to allow relief under Rule 60b-6, it must be unequivocal. It must be absolutely certain that that change is relevant and that change would have made a great difference in the case. I would only point out one time is that Martinez versus Ryan was actually decided before Mr. Shepard filed his certiorari petition, and this Judge Merritt, in dissent, you even brought up the issue of whether ineffective assistance of counsel might have been a reason for why the record was not fully dealt, if it wasn't fully developed, why it may not have been. And I would submit that there was something in this record which would have prompted or could have prompted in the cert petition raising at least Martinez versus Ryan. Can I ask one brief question? The Martinez standard says it has to be a substantial claim to set aside the procedural default. Yes. I gather you would advocate a different standard of compelling or a different merits-based standard with respect to the claim in order to set aside 60b. You would say you need something stronger than substantial claim? No, Your Honor. What I'm saying is the threshold question is first extraordinary circumstances. Right. You would have to have... Would any showing as to the merits of the claim, in your view, amount to extraordinary circumstances requiring or allowing 60b relief? Your Honor, I believe it could. I believe it could. I think there's always room for the idea that compelling undiscovered evidence that raises the real specter of actual innocence would be... Injustice. That's right, and a miscarriage of justice would fit within Rule 60b-6. Okay. Thank you, Your Honors. Your Honors, just to address a few quick points, one on the point that my opposing counsel just raised as far as the cert petition and the timing of when things were raised. I mean, Gonzales seems to suggest if you don't raise it in a cert petition while you're still in the direct appeal, not final stage, that counts against you on 60b. Your Honor, there are all sorts of factors, yes, as far as diligence under Gonzales and that kind of thing. Lopez in the Ninth Circuit says we're not going to hold it against you and say that you weren't diligent for failing to raise a claim that is clearly precluded by law. In this case, the argument that IAC of PC counsel excused the default of the trial IAC claim. I think we're talking about two different things. Martinez came out a month before you filed your cert petition, from our opinion, with the U.S. Supreme Court. Correct. And there was no mention of Martinez in that petition. I think Mr. Willey's point is, and I think it's based on language in Gonzales, that you should have asked for a vacater of our opinion, our judgment or whatever mandate, in the first appeal based on the Martinez change in law. But you didn't do that for whatever reason, and that should be held against you. That makes the case less extraordinary, I think, is the term that Gonzales used for that same omission. Well, a couple of things, Your Honor. First, it was not our understanding that we had the ability to raise that issue. You could always flag it. I mean, I know you didn't even appeal that issue in the first appeal. Right. I mean, Bird v. Collins castigates us for raising issues that are clearly precluded by law. But, you know, by the time you went to the court, there would be nothing, I think, that would preclude you from just simply asking for a vacater. The other issue is that I know this court has held in Memorial v. Mitchell that Martinez itself doesn't apply in Ohio. So the critical decision for purposes of Ohio inmates, at least according to the McGuire panel, was Trevino. And certainly the 60B motion in this case was raised, was filed well before the Supreme Court's decision in Trevino. So we did everything we could to raise this argument, Your Honor. Your answer, as I understand it, was that while Martinez had been decided, Trevino had not been decided, and Trevino broadened Martinez. This court had held that Martinez was not applicable, but that Trevino was. Certainly. That's your answer. Well, the answer is yes, that Trevino, under Trevino, clearly, Trevino and the Martinez rule, however we apply that through Trevino, is indisputably applicable here. And my counsel says that he could have, Mr. Shepard, could have raised the trial IAC claim on direct appeal, but he fails to acknowledge the fact that Ohio law clearly precludes someone from asserting their own ineffectiveness. And that's what the situation would have been had Mr. Shepard included a trial IAC claim related to the juror misconduct claim on direct appeal, because it was the same counsel who litigated the new trial motion, who then litigated the direct appeal. So there's just no way under Ohio law that he could have actually raised this claim on direct appeal. I also want to make sure that we're clear that we're talking about the trial IAC claim here. We're not talking about anything that would be a second or successive issue. We're talking about the trial IAC claim. Well, I mean, it depends, again. It depends on how we bound your claim in the petition. Okay. In Evitz v. Lucie, the Supreme Court said that the headings of one's claims in a petition are just as valid to actually be considered to have presented the claim. And so if the heading in the petition is consulted, as well as some of the argument in there, it's very clear that the issue was simply that trial counsel failed to present anything in support of the prejudice argument, because they didn't understand the law. They thought all they needed to do was establish that contact happened. Under Hinton v. Alabama, that's quintessential deficient performance. I also want to make sure that we're clear that other factors here include, again, this is a death case, and so the need for reliability is great. The case – I see my time is up. If I might finish. Yes, this case has been reviewed. But this claim has never been given the one meaningful opportunity for factual investigation that Trevino says needs to happen to protect the bedrock right of effective assistance of counsel, nor has it ever been given one meaningful opportunity for merits review. And that's all we're asking for here is that opportunity. I mean, that investigation did happen in the district court in connection with the evidentiary hearing, right? Now, we didn't consider that because we couldn't. No, Your Honor. I would submit that that's different than what we're talking about with the evidence necessary to prove the trial IAC claim is different, although some overlap, but different than the evidence necessary for the juror misconduct claim. You put the lawyer on the stand is the difference principally. Certainly. There needs to be, especially when Judge Frost found that PC counsel made a reasoned, informed investigative decision as the basis for insulating it as reasonable. But there needs to be evidence of that before that decision can be made. That's all we're saying, that this case should be remanded to the district court for the hearing that is necessary to be able to make these determinations. Nothing prevents you, I think as Judge Merritt elicited before, from going to state court and trying this again over there based on new evidence relating to trial counsel's performance. I mean, there's procedure where you could at least seek leave to do that? As I understand it, yes, Your Honor. But that would ideally be in the context of having this case sent back to the district court and then a stay and obey of some sort to be able to take care of it. We don't need to do that in order for you to seek that and the Ohio courts to do it if they choose to do it. Is that accurate? When you say you, I guess maybe that depends. As a federal defender, it gets a little sticky whether we can go to state court. No, I'm sorry. I mean your client. The Ohio courts could take this up tomorrow if they wanted to, if they got an appropriate motion or petition absent any action from us, right? As far as I know, Your Honor, yes. You're a federal defender. So we would have to go through hoops to be able to do that, I guess is what I'm saying. Thank you, Your Honor. Great arguments, if I may. Thank you. The case will be submitted.